SOUTHERN SURETY CO. v. FIRST STATE
BANK OF MONTGOMERY. (No. 5295.)

(Court of Civil Appeals of Texas. San Anto-
nio. May 27, 1914. Rehearing Denied
June 17, 1914.)

INSURANCE (§ 654*) — ACTION ON FIDELITY
BOND—SUFFICIENCY OF EVIDENCE—COMPLI-
ANCE WITH WARRANTIES—"ONCE A MONTH."

Evidence, in a bank's action on the fidelity
bond of its cashier, *held* to show that the bank
had complied with its warranties as to when
his accounts were last examined, that there
was then no shortage or indebtedness to the
bank, and as to monthly examinations and re-
ports as to his accounts; the warranty of an
examination "once a month" not requiring an
examination exactly every 30 days, but once
during each month.

[Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 1677, 1680, 1681, 1683–1685;
Dec. Dig. § 654.*]

Appeal from District Court, Montgomery
County; L. B. Hightower, Judge.

Action by the First State Bank of Mont-
gomery against the Southern Surety Com-
pany. Judgment for plaintiff, and defend-
ant appeals. Affirmed.

Arthur G. Moseley, of St. Louis, Mo., and
William N. Foster, of Conroe, for appellant.
C. W. Nugent and C. A. Toler, both of Con-
roe, Dean, Humphrey & Powell, of Hunts-
ville, and Jas. T. Rucks, of Conroe, for ap-
pellee.

CARL, J. The First State Bank of Mont-
gomery sued the Southern Surety Company,
an Oklahoma surety corporation doing busi-
ness in Texas under a permit, and alleged,
substantially: That on August 3, 1908, the
defendant executed a fidelity bond to the
bank wherein and whereby it undertook to
make good and reimburse to the bank any
pecuniary loss which the· bank might sustain
during the period of one year, beginning
July 31, 1908, and ending July 31, 1909, by
any act of N. O. Lauve, as cashier of the
bank, not to exceed $5,000, the amount of
the bond; that during the life of the bond
N. O. Lauve converted and misapplied $5,489
of the funds of the bank; and that the bank
did not discover the defalcation until on or
about February 15, 1910, and that immedi-
ately upon said discovery the bank notified
the surety company of the loss and demand-
ed payment in the sum of $5,000.

The surety company alleged that the bond
was based upon warranties therein contained
which constituted conditions precedent to the
accrual of any obligation thereon against the
company, and pleaded specially this clause
in the bond:

"Whereas, the employer has heretofore de-
livered to the company certain representations
and promises relative to the duties and accounts
of the employé and other matters, it is hereby
understood and agreed that those representa-
tions and such promises and any subsequent
representation or promise of the employer here-
in required by or lodged with the company are
hereby expressly warranted to be true."

It is· claimed that·the contract was breach-
ed by the bank, in that question No. 5 was in-
correctly answered. That question was:

"Q. To whom and how frequently will he ac-
count for his handling of funds and securities?"

And the answer was:

"A. Once a month to board of directors, and
to commissioner of banking of the state of Tex-
as, whenever called upon as required by law."

It is alleged that Lauve did not so account
to the board of directors during the period
covered by the bond. Question 6 was:

"What means will you use to ascertain wheth-
er his accounts are correct? How frequently
will they be examined? By whom will they
be examined?"

And the answers were:

"Monthly reports and state examinations;
not less than six times a year; committee of
directors—state examination."

It is claimed that these requirements were
not met, and that they were warranties with
which the bank was bound to comply. Ques-
tions 7 and 8 and the answers given to same
were:

"(7) When were his accounts last examined?
June 30, 1908. (8) Were they reported correct?
Yes."

It is claimed that the answers to these
questions were not true, and that no exam-
ination was made on June 30, 1908, and re-
ported correct, and that by reason of such
false answers these warranties were breached.

In a trial amendment the surety company
alleged that, in answer to questions 9 and
10 made by the bank, it was stated that
Lauve was not indebted to the bank, when
in fact he·owed the bank $400, and that said
false statements were material to the risk
assumed, and, by making such false answers,
the bank breached its agreement and war-
ranty and thereby rendered the bond void.

The bank denied these allegations, and al-
leged that if Lauve was short with the bank
at the time the answers were made, or owed
it, the bank did not know it, and that all of
the answers were made in good faith; that
the answers made were true, but, if ·not,
they did not increase the risk; but, if ·not
true, then defendant cannot insist upon same
as a bar of the right of action, because it
did not accompany the bond with a written ·
or photographic copy of the application made
for the bond and a copy of all questions ask-
ed and answers given thereto, as required by
statute.

The trial was before the court, without a
jury, and judgment was rendered for $6,025,
same being principal of $5,000, and interest
to that date, and for costs, in favor of the
bank.

There is one assignment of error briefed
which is to the effect that the court erred in
rendering judgment for the plaintiff, for the
reason, it is claimed, the defaulting cashier's
accounts were not examined by the directors
of the bank as they should have been under
the alleged warranties shown by the answers

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

167 S.W.—53

to the questions propounded in securing the bond sued upon; that such examinations as were made were not such as were contemplated by the alleged warranties, and were not reasonably calculated to disclose the defalcations of the cashier; and that no verification of the amounts with depositories was made.

The trial court filed conclusions of fact. We will not here set out the substance of the same, except that which bears upon this assignment of error. Some of the questions asked and answered by L. A. Peel, vice president of the bank, in the application for the bond for N. O. Lauve, are as follows:

| Questions. | Answers. |
| --- | --- |
| 1. To whom is the bond to be made payable? Give exact title. | The First State Bank of Montgomery, Texas. |
| 2. From what date is the bond to be written, and for what amount? | July 31, 1908—$5,000. |
| 3. Who will pay the premium? | First State Bank. |
| 4. How long has he been in your employ, and what salary does he receive? | Since January 4, 1907 |
| 5. To whom and how frequently would he account for his handlings of funds and securities? | Once a month to board of directors, and to commissioner of banking of the state of Texas, whenever called upon as required by law. |
| 6. (a) What means will you use to ascertain whether his accounts are correct? | (a) Monthly reports and state examination. |
| (b) How frequently will they be examined? | (b) Not less than six times a year. |
| (c) By whom will they be examined? | (c) Committee of directors—state examination. |
| 7. When were his accounts last examined? | June 30, 1908. |
| 8. Were they reported correct? | Yes. |
| 9. Is there now, or has there been, any shortage due you by applicant? | No. |
| 10. (a) Is he now in debt to you? | (a) No. |
| (b) If so, state amount and nature of indebtedness. | (b) ——— |

The bond executed contained this clause: "Whereas, the employer has heretofore delivered to the company certain representations and promises relative to the duties and accounts of the employé and other matters, it is hereby understood and agreed that these representations and such promises and any subsequent representation or promise of the employer herein required by or lodged with the company are hereby expressly warranted to be true."

The application upon which the bond was based was not attached to the bond, nor was any written or photographic copy of the said application attached, or delivered to the bank, accompanying the bond or otherwise. On June 30, 1908, there was no shortage due the bank from N. O. Lauve, and he was not indebted to the bank in any amount on July 15, 1908, when said application was signed by L. A. Peel, vice president of the bank. The accounts of Lauve with the bank were examined as of date June 30, 1908, and reported correct. During the period covered by the bond the said Lauve made his reports accounting for the handling of the funds and securities of the bank once every month to the board of directors, and also during said time accounted to the commissioner of banking of the state of Texas whenever called upon as required by law. The bank required and obtained monthly reports from Lauve showing the condition of the bank in order to ascertain that they were correct, and examinations were made by the commissioner of banking when required. These reports were examined much oftener than six times a year by the auditing committee of the directors of the bank, and the usual state bank examinations were made. The monthly reports were checked over by a committee of the board of directors at each monthly meeting, and in addition thereto W. B. Wood, president of the bank, during the entire time of the bond, assisted by other directors as an auditing committee, made frequent and thorough examinations of the books of the bank, and of the accounts of the said Lauve, and of the accounts of the bank as kept by Lauve, and of the securities of the bank. Wood, with other directors, counted the cash and securities at frequent intervals, and more than six times a year, and as an auditing committee aforesaid took every precaution required by the terms of the questions and answers contained in the application for said bond.

During the life of the bond, between September, 1908, and the 24th day of June, 1909, N. O. Lauve abstracted and converted from the funds of the bank $5,589.20, and covered and concealed such abstractions of funds by false and fraudulent entries made in the bank books. He concealed $5,458.15 of said abstractions by false and fraudulent entries in the T. J. Peel account on the bank books, and $131.05 of the defalcation was in the E. C. Wise account. The said N. O. Lauve made all the entries in these two accounts, and so completely concealed such defalcations in said accounts in the bank as to make it impossible to detect the same, except by calling in the passbooks of the individual depositors and checks and vouchers, which was impractical, and is never done in examinations made under order of the state banking commissioner or by the board of directors of the bank. Lauve personally made the entries in the Peel and Wise accounts and in their passbooks and was assisted therein by no one else. These passbooks showed the true status of the T. J. Peel and E. C. Wise accounts; but the general and individual ledgers of the bank did not. On the general and individual ledgers, these accounts were so kept that the shortages and defalcations were effectually concealed.

The bank had no notice of any of these defalcations until about the 11th or 12th of February, 1910, and, as soon as the bank officials discovered the same, the surety company was notified, and it sent F. A. Ungles to Montgomery to examine the bank, and the bank officials afforded him every facility to make an effective and thorough examination of the books of the bank and its affairs, and furnished the surety company an itemized bill of particulars of the defalcations. The surety company, in response to said bill, denied liability.

We have carefully reviewed the evidence and conclude that it justifies the findings of fact made by the trial court. And the finding of the court that the representations as to existing and past facts made in said warranties were true is in consonance with the facts given in evidence. The minutes of the board of directors of the bank were introduced and showed a meeting of that body each month beginning July 9, 1908, and ending August 31, 1909; and it was testified by the directors that at each of these meetings statements were submitted by Lauve, the cashier, and examined and compared with the books of the bank. Mr. Wood, the president, was active in looking after the bank's affairs, and made frequent examinations, and says that he, with the committee, went over the accounts, books, and cash, and compared them with the various monthly statements submitted by Lauve. More than six examinations by the state banking department are shown during the life of the bond.

The shortage occurred in the two accounts of Peel and Wise, and it was shown beyond question that the defalcations exceeded the face of the bond. Ungles, the surety company's representative, was afforded every opportunity to examine the bank and its affairs, and the depository accounts were reconciled to the bank balances as entered by Lauve. It is not within the usual duties of the directors of a bank, or a committee representing them, to examine each month into the depository accounts, and to call in passbooks and vouchers and verify the same each month. In the very nature of things, they cannot be expected to do this. But, even if that had been done in this instance, it would have accomplished nothing, because the depository accounts were shown to be correct, and the places where the losses occurred were fixed at the Peel and Wise accounts. The facts showed that the board of directors did comply with the warranties; that Lauve did not owe the bank July 15, 1908; that his accounts were examined June 30, 1908; that monthly reports were made thereafter by Lauve and during the life of the contract; and that these reports were examined and compared with the bank books by a committee of the directors. Further, the state banking department made the necessary examinations.

When the surety company wrote that bond, based upon the application, it must be held to have known the usual and customary method of conducting a bank by a board of directors. The fact that it is stated an examination will be made once a month does not mean exactly every 30 days, but just what the answer says, "once a month." That means once during each month. There was no dereliction on the part of the bank directors, and we hold that they did comply with these warranties.

The judgment is affirmed.